Rachel H. Parkin
Liesel Shoquist
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
E-Mail: rparkin@bigskylawyers.com
        lshoquist@bigskylawyers.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | Cause No. CV-21-00036-DLC |
| Plaintiff, | The Hon. Dana L. Christensen |
| -vs- | **ANSWER AND COUNTERCLAIMS** |
| JEFFREY JAMES HALVORSON, | |
| Defendant. | |

COMES NOW Defendant Jeffrey James Halvorson ("Halvorson"), by and through counsel of record, and for his Answer to Plaintiff Safeco Insurance Company of America's ("Safeco") Complaint for Declaratory Judgment, admits, denies and alleges as follows:

ANSWER AND COUNTERCLAIMS                                          PAGE 1

1.      In answering the allegations of Paragraph 1 of Safeco's Complaint, Halvorson admits the same insofar as the allegations reflect the public record on file with the New Hampshire Secretary of State's Office.

2.      In answering the allegations of Paragraph 2 of Safeco's Complaint, Halvorson admits the same.

3.      In answering the allegations of Paragraph 3 of Safeco's Complaint, Halvorson admits the same insofar as the allegations are not inconsistent with the terms of the referenced Policy. To the extent Safeco seeks to alter or limit the language of the Policy by the allegations of this paragraph, Halvorson respectfully submits that the terms and conditions of the Policy control.

4.      In answering the allegations of Paragraph 4 of Safeco's Complaint, Halvorson denies the amount in controversy is $212,900. Halvorson affirmatively states the amount in controversy exceeds $212,900, which is the Coverage A limit exclusive of the Extended Dwelling Coverage and Additional Property Coverages. Halvorson admits the remaining allegations of Paragraph 4.

5.      In answering the allegations of Paragraph 5 of Safeco's Complaint, Halvorson admits the same.

6.      In answering the allegations of Paragraph 6 of Safeco's Complaint, Halvorson admits the same.

7. In answering the allegations of Paragraph 7 of Safeco's Complaint, Halvorson admits the insured premises includes a three bedroom house, and that the three bedroom house is used principally as a private residence. Halvorson denies the remaining allegations of Paragraph 7.

8. In answering the allegations of Paragraph 8 of Safeco's Complaint, Halvorson admits the premises included a building separated from the three bedroom house by clear space and connected to the house by a utility line and piping. Halvorson affirmatively states that this was his community center, which also was used principally as a part of his private residence. Halvorson denies the remaining allegations of Paragraph 8.

9. In answering the allegations of Paragraph 9 of Safeco's Complaint, Halvorson admits the same.

10. In answering the allegations of Paragraph 10 of Safeco's Complaint, Halvorson denies the building was used as a commercial building. Halvorson admits the remaining allegations of Paragraph 10.

11. In answering the allegations of Paragraph 11 of Safeco's Complaint, Halvorson denies the same. Halvorson affirmatively states he hosted invited guests at his private residence, but he did not provide accommodations to the public.

12. In answering the allegations of Paragraph 12 of Safeco's Complaint, Halvorson denies the same.

13. In answering the allegations of Paragraph 13 of Safeco's Complaint, Halvorson denies the same.

14. In answering the allegations of Paragraph 14 of Safeco's Complaint, Halvorson denies the building was used as a commercial building. Halvorson admits the remaining allegations of Paragraph 14.

15. In answering the allegations of Paragraph 15 of Safeco's Complaint, Halvorson denies the building was used as a commercial building. Halvorson admits the remaining allegations of Paragraph 15.

16. In answering the allegations of Paragraph 16 of Safeco's Complaint, Halvorson states that the terms and conditions of the Safeco Policy are contained within the Safeco Policy. To the extent Safeco seeks to alter or limit the language of the Safeco Policy by its allegations, Halvorson respectfully submits that the terms and conditions of the Policy control. Halvorson denies any allegations contained in Paragraph 16 not specifically admitted herein.

17. In answering the allegations of Paragraph 17 of Safeco's Complaint, Halvorson states that the terms and conditions of the Safeco Policy are contained within the Safeco Policy. To the extent Safeco seeks to alter or limit the language

of the Safeco Policy by its allegations, Halvorson respectfully submits that the terms and conditions of the Policy control. Halvorson denies any allegations contained in Paragraph 17 not specifically admitted herein.

18. In answering the allegations of Paragraph 18 of Safeco's Complaint, Halvorson denies the building was used as a commercial building. Halvorson admits the remaining allegations of Paragraph 18.

19. In answering the allegations of Paragraph 19 of Safeco's Complaint, Halvorson admits the same.

20. In answering the allegations of Paragraph 20 of Safeco's Complaint, Halvorson admits the same.

21. In answering the allegations of Paragraph 21 of Safeco's Complaint, Halvorson denies the same.

22. Any allegation of Safeco's Complaint for Declaratory Judgment not otherwise qualified or denied is hereby denied.

## **COUNTERCLAIM**

For his Counterclaim against Safeco, Halvorson alleges as follows:

1. Halvorson owns an 8-acre property located just south of Arlee, Montana, with an address of 24450 US Highway 93, Arlee, MT 59821.

## THE SAFECO POLICY

2. Halvorson's property was insured under a homeowners' policy issued by Safeco – specifically, Safeco Policy No. OM2341734 with a policy period of December 20, 2019 to December 20, 2020 ("the Policy").

3. The Policy provides, in pertinent part, the following coverages.

### SECTION I – PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

### COVERAGE A – DWELLING

We cover:

1. the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

    …

### COVERAGE B – OTHER STRUCTURES

We cover:

1. fences, driveways and walkways; and

2. other structures on the *residence premises*, separated from the dwelling by a clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling only by a fence, utility line, plumbing, or similar connection.

    …

### POLICY DEFINITIONS

…

    h. "***Residence premises***" means:

        (1) the one, two, three, or four family dwelling, used principally as a private residence;

        (2) other structures and grounds; or

        (3) that part of any other building;

    where you reside and which is shown in your Policy Declarations

…

4. The term "dwelling" is not defined in the Policy.

5. The Policy also includes an Extended Dwelling Coverage endorsement, which provides that "For an additional premium, we will settle covered losses to the dwelling described in Coverage A up to the additional limit of liability shown in the Policy Declarations for **Extended Dwelling Coverage**…" providing certain conditions are met.

6. The Policy Declarations show Halvorson paid an additional premium for the Extended Dwelling Coverage which increased the Coverage A limit by 50%.

//

//

7. The Policy also includes various Additional Property Coverages, including but not limited to **Debris Removal**; **Trees, Shrubs and Other Plants**; **Building Ordinance or Law Coverage**; and **Household Products.**

8. The availability and/or limits of these Additional Property Coverages depends upon whether coverage exists for the loss under Coverage A – Dwelling.

9. A certified copy of the Policy is attached hereto as Exhibit 1.

## THE INSURED PREMISES

10. The insured property contains a number of structures, including (as pertinent to this action) a three bedroom house, a large building used as a commercial tannery by the prior owners and converted into living space by Halvorson (hereinafter the "community center"), and a storage shed.

11. The community center, at approximately 8,000 square feet, contained:

   a. bedroom, with a queen-sized bed, bookshelves, and a closet;

   b. a breakfast nook with a restaurant style booth and a counter-top desk;

   c. a dining area that held a 14-foot custom built dining table with chairs;

   d. a game room that was decorated with extensive memorabilia

and contained a large tabletop gaming area with leather executive chairs;

e. a family room that housed leather couches, a large screen television, and a piano;

f. a full bathroom downstairs that also included laundry facilities;

g. a full bathroom upstairs;

h. an art room upstairs that housed, amongst other things, stocked bookshelves and easels;

i. a computer room upstairs that housed multiple computers for cooperative and interactive online gaming;

j. a large attic storage area where Halvorson stored household items such as holiday decorations, extra sheets/blankets, old school materials and photographs, and electronic equipment;

k. a fully stocked outdoor kitchen that had two refrigerators, a freezer, dry food storage, a grill, and a gas stove/oven;

l. a home office that housed both personal and business records;

m. garage-type storage that housed some trailer parts but primarily personal recreation equipment, tools, and building materials and supplies; and

      n.      a shop that was used for building trailers which Halvorson sold, and equally as much for home and personal projects.

12. The storage shed was next to, but not adjoining, the community center. The storage shed was used primarily for housing bicycles.

13. The community center was not attached to the three bedroom house, except by shared utility and plumbing lines.

14. Halvorson used the community center as part of his private residence. His personal property was stored there and decorated the building. He regularly ate meals there and napped there, hosted holiday gatherings there, and routinely used the space for watching movies and playing games.

15. Halvorson utilized the community center for activities of daily living on a daily basis, and the community center was just as much a part of Halvorson's private residence as the three bedroom house.

16. Halvorson regularly hosted guests at his property. Guests were welcomed through travel websites such as Couchsurfing.com or cycle touring websites such as Warmshowers.org. Through these websites guests could request to stay, and Halvorson could review their profiles and accept or reject their requests.

17. Halvorson also posted his property as an available free place to stay

on Craigslist.com. These guests were required to fill out an extensive application created by Halvorson, after which Halvorson could accept or reject their request.

    18.    All of Halvorson's guests were invited guests who could be asked to leave at any time. Guests were friends and family members and were not charged, though they did assist with chores at the property – doing their own dishes and laundry, assisting with weeding and lawn mowing, and generally keeping any shared living spaces clean.

    19.    Some guests stayed in Halvorson's three bedroom house, some guests stayed in two other one-room cabins located on the property, and some guests stayed in the community center.

    20.    Halvorson's property is not, and at the time of the fire loss was not, "open to the public" as evidenced by a Missoula County district court order which found his property was not an "establishment" under MCA § 50-51-102(4) and was not required to have an accommodations license. *See Missoula Cty. v. Halvorson*, Findings of Fact, Conclusions of Law, and Order, p. 18, Cause No. DV-11-1419, Montana Fourth Judicial District Court (May 2, 2016), attached as Exhibit 2.

    21.    This same Order issued by the Missoula County District Court held that under the applicable Certificate of Subdivision Approval ("COSA"), that

Halvorson was "enjoined permanently from maintaining more than one structure on the property that meets the definition of a dwelling under the Missoula City-County Health Code." Order at p. 19. The Order relied on the Missoula City-County Health Code ("MCCHC") definition of a "dwelling", which is "*one or more structures* or portions thereof, which is intended, designed, or used for human occupancy and provides independent living facilities including provisions for sleeping, cooking, and sanitation." MCCHC, Reg. 1, § 4(A)(25) (emphasis added); Order at p. 17.

22. At the time of this district court's Order, the community center had an interior kitchen. The district court's Order required Halvorson to remove the kitchen from the community center so that the community center would no longer be a *second, separate dwelling* and so Halvorson would only have a single dwelling on the property as defined by the MCCHC, and as required by the COSA. Nothing in the district court order indicates that the community center could not be considered or used as a dwelling in connection with the three bedroom house, as expressly permitted by the language of MCCHC, Reg. 1, § 4(A)(25).

23. Halvorson did remove the interior kitchen, and installed a kitchen outdoors. The County inspected the premises, and then filed a Notice of Compliance confirming Halvorson had complied with the terms of the district

court's Order. *Missoula Cty. v. Halvorson*, Notice of Defendant's Compliance With Judgment and Order, Cause No. DV-11-1419, Montana Fourth Judicial District Court (Mar. 13, 2017).

## THE FIRE LOSS AND SAFECO'S DENIAL OF THE CLAIM

24. Both the community center and the storage shed were lost in a fire on August 1, 2020.

25. The three bedroom house sustained some minor fire and heat damage, but was not lost.

26. Halvorson immediately tendered the fire loss to Safeco pursuant to the Safeco Policy.

27. Safeco's adjuster found the repair cost for the community center, minus depreciation and deductible, was $378,475.37. Safeco's adjuster found the repair cost to the three bedroom house, less depreciation and less $4,558.30 already paid by Safeco to restore power to the property, was $13,430.89. Despite having inspected the property, Safeco's adjuster did not include the loss of the storage shed in his report.

28. On December 8, 2020, Safeco finally indicated it would afford coverage for the loss, and issued payment for $34,720.89. This payment represents the policy limit of $21,290 under Coverage B – Other Structures for the loss of the

community center, and an additional $13,430.89 under Coverage A – Dwelling for damage to the three bedroom house. No payment was included for the loss of the shed.

29. The same day, Halvorson advised Safeco via email that the community center was covered under the Policy's Coverage A – Dwelling and requested that Safeco review its coverage determination.

30. Halvorson sent a second written demand on December 16, 2020, outlining specifically his coverage position and demanding payment under the Policy for the remainder of the Coverage A – Dwelling and Extended Dwelling Coverage for the loss of the community center, and for the policy limits under Coverage B – Other Structures for the loss of the shed. He also demanded payment of the Debris Removal Coverage under Additional Property Coverages, and indicated additional other coverages such as the Trees, Shrubs, and Other Plants Coverage, the Building Ordinance or Law Coverage, and the Household Products Coverage could be implicated as cleanup began.

31. Finally, on March 31, 2021 – nearly seven months after the fire – Safeco provided written notice that it was denying the claim for coverage under Coverage A – Dwelling on the basis that the community center was not a dwelling used principally as a private residence, and simultaneously filed the present action.

## COUNT I – DECLARATORY RELIEF

32.     Halvorson re-alleges Paragraphs 1 through 31 above.

33.     An actual controversy exists between Safeco and Halvorson, as the parties to this lawsuit dispute what coverage exists for the fire loss at the insured premises under the Safeco Policy.

34.     Declaratory judgment pursuant to 28 U.S.C. §§ 2201-02 and Mont. Code Ann. §§ 27-8-201; 27-8-313 is both necessary and proper in order to set forth and determine the rights, obligations and liabilities which exist under the Safeco Policy for Halvorson's fire loss.

35.     Specifically, Halvorson seeks a declaration that the community center is a dwelling under the terms of the Safeco Policy; that Safeco owes Halvorson the Coverage A – Dwelling policy limits for the loss of the community center, which also implicates the Extended Dwelling Coverage and Additional Property Coverages; and that the storage shed is covered under Coverage B – Other Structures.

**WHEREFORE**, Halvorson respectfully requests this Court enter judgment as follows:

1.     Declare that the community center is a dwelling under the terms of the Safeco Policy; that the Safeco Policy provides coverage to Halvorson for the

loss of the community center under Coverage A – Dwelling, which also implicates the Extended Dwelling Coverage and Additional Property Coverages; that Safeco owes Halvorson the Coverage A – Dwelling policy limits for the loss of the community center; and that the storage shed is covered under Coverage B – Other Structures.

    2.    For Halvorson's costs and attorney's fees in defending this action. *See e.g. Boulter v. Hartford Fire Ins. Co.*, 321 F. Supp. 3d 1199, 1205 (D. Mont. 2018) (insured entitled to recover attorney fees "when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract") (citing *Mountain West Farm Bureau Mut. Ins. Co. v. Brewer*, 315 Mont. 231, 69 P.3d 652, 655 (2003)).

    3.    That Safeco's Complaint for Declaratory Judgment against Halvorson be dismissed and Safeco take nothing by virtue of its Complaint for Declaratory Judgment;

    4.    That Judgement be entered in favor of Halvorson, together with his costs of suit.

    5.    For such further relief as the Court deems just and proper under the circumstances.

    //

DATED this 3rd day of June 2021.

By: /s/ Rachel H. Parkin

Rachel H. Parkin, Esq.
Liesel Shoquist, Esq.
MILODRAGOVICH, DALE
& STEINBRENNER, P.C.
620 High Park Way
P.O. Box 4947
Missoula, Montana 59806-4947
Telephone: (406) 728-1455
Fax No: (406) 549-7077
E-Mail:  rparkin@bigskylawyers.com
          lshoquist@bigskylawyers.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 3rd day of June 2021 a true and correct copy of the foregoing ANSWER AND COUNTERCLAIM was filed and served via CM/ECF on the following:

    John E. Bohyer
    Ryan Heuwinkel
    Brandon R. Shannon
    BOHYER ERICKSON,
    BEAUDETTE & TRANEL, P.C.
    283 West Front, Suite 201
    P.O. Box 7729
    Missoula, MT 59807-7729
    Telephone: (406) 532-7800
    Email: mail@bebtlaw.com

    By: /s/ Rachel H. Parkin
          Rachel H. Parkin