IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | CV 21–36–M–DLC |
| Plaintiff/Counterclaim Defendant, | ORDER |
| vs. | |
| JEFFREY JAMES HALVORSON, | |
| Defendant/Counterclaim-Plaintiff. | |

Before the Court is Plaintiff and Counterclaim Defendant Safeco Insurance Company of America's and Defendant and Counterclaim Plaintiff Jeffrey James Halvorson's cross motions for summary judgment. (Docs. 9; 12.) These motions raise two questions regarding the interpretation of a homeowner's insurance policy issued by Safeco to Halvorson, including: (1) whether an outbuilding on Halvorson's property is a "dwelling;" and (2) if so, was it used principally as a private residence. The Court only reaches the first issue, concluding the outbuilding is not a dwelling within the meaning of the Policy. Consequently, it will grant Safeco's motion for summary judgment, and, because resolution of this issue is case dispositive, order that judgment be entered, and this case closed.

1

### UNDISPUTED FACTS

In late 2019, Safeco issued a homeowners insurance policy ("the Policy") to Halvorson covering real property located at 24450 US Highway 92 North in Arlee, Montana ("the Property").  (Docs. 14 at 2; 23 at 2.)  Relevant to the issues presented in this case, the Policy generally provides two types of property coverage:

**BULDING PROPERTY WE COVER**

**COVERAGE A—DWELLING**

We cover:

1. the dwelling on the ***residence premises*** shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

2. attached carpeting, built in appliances, fixtures; and

3. materials and supplies located on or next to the residence premises used to construct, alter or repair the dwelling or other structures on the ***residence premises.***

**COVERAGE B—OTHER STRUCTURES**

We cover:

1. fences, driveways and walkways; and

2. other structures on the ***residence premises****,* separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

(Doc. 35-1 at 18 (emphasis original).)  Coverage A has a $212,900 limit and Coverage B has a $21,290 limit.  (*Id.* at 8.)  The term "residence premises" is defined as: (1) "the one, two, three or four family dwelling, used principally as a private residence;" (2) "other structures and grounds;" or (3) "that part of any other building."  (Doc. 35-1 at 42.)

When the Policy was issued, the Property had several structures on it, including a three-bedroom house and "a separate building" that is the subject of this case ("the outbuilding").[1]  (Docs. 14 at 2; 23 at 2.)  The outbuilding had "various storage areas, an office, a guest bedroom, a dining hall with couches, an 'old kitchen' which had bunk beds and video gaming equipment, a TV and music room, a game room, a computer lab, a writing room, a library, and a bathroom with shower and washer and dryer."  (Doc. 14 at 5–6.)  The house and outbuilding were separated by about 20 feet of space but shared plumbing and utility lines, an electrical meter, septic system, and water source.  (*Id.* at 4.)

Halvorson typically slept in the house, kept his clothes there, did laundry there, and used the bathroom there most often.  (*Id.*)  But Halvorson used the outbuilding as well, and he would, among other things, nap, play games, watch

---

[1] Safeco refers to the outbuilding as a "commercial building" while Halvorson calls it a "community center."  (Docs. 10 at 6; 13 at 4.)  The Court settles on the moniker "outbuilding," to denote the fact that the outbuilding was a detached freestanding structure separate and apart from the Property's three-bedroom house.  (Doc. 14 at 4.)

movies, cook, eat, do laundry, store business records, and play music there. (Doc. 17 at 3–6.) The outbuilding was also used for storage and contained a workshop that Halvorson used for both personal and business purposes, such as woodworking or welding raft trailers. (*Id.* at 5.)

For at least a time, Halvorson operated what the parties refer to as a "free guest ranch" at the Property. (Doc. 14 at 6.) Halvorson let guests stay at the Property for free, with guests staying in the house, outbuilding, camped on the lawn, or in an insulated shed. (*Id.* at 7.) Missoula County eventually sued Halvorson over his use of the outbuilding to facilitate the guest ranch. (*Id.* at 10.) Specifically, this action complained Halvorson was violating Montana's Sanitation in Subdivision Act and the Missoula City-County Health Code. (Docs. 14 at 10–11; *see also* Doc. 11-3.) The state district court found that the outbuilding was being operated as a second "dwelling unit," within the meaning of the Missoula City-County Health Code, in violation of applicable sanitation regulations. (Docs. 11-3 at 17–18; 14 at 12.)[2]

As such, the state district court enjoined Halvorson from maintaining more

---

[2] The version of the Missoula City-County Health Code in effect at the time of the state district court's ruling defined "dwelling unit or residence as 'one or more structures or portions thereof, which is intended, designed, or used for human occupancy and provides independent living facilities including provisions for sleeping, cooking, and sanitation.'" (Doc. 11-3 at 17.) This definition remains in effect, but the term dwelling unit has been changed to dwelling. Missoula City-Cty Health Code, Reg. 1, § 4(A)(25) (2018).

4

than one "dwelling unit" on the Property and ordered him to dismantle the outbuilding's kitchen and at least two of its bedrooms. (Docs. 11-3 at 19; 14 at 13.) On October 28, 2016, Halvorson filed a Notice of Compliance with the state district court indicating he had accomplished the ordered modifications to the outbuilding. (Doc. 11-4 at 1–3.) In this notice, Halvorson stated that he would "not at any time have two (2) buildings that meet the definition of a 'dwelling,'" meaning "that he will not maintain more than one structure on the property that contains a bedroom, bathroom, and kitchen within them." (*Id.* at 2.)

Unfortunately, on August 1, 2020, a fire destroyed the outbuilding, resulting in a total loss. (Doc. 23 at 2.) Safeco paid the policy limits of $21,290 under Coverage B. (*Id.* at 2.) Halvorson demands policy limits under Coverage A. (Docs. 1 at 5; 5 at 5.) This litigation ensued. On March 31, 2021, Safeco filed its complaint against Halvorson seeking a "declaration there is no coverage under Coverage A for the loss of the" outbuilding. (Doc. 1 at 5.) Halvorson has counterclaimed, seeking a declaration that Coverage A does apply, and, accordingly, that Safeco owes him the policy limits related to that coverage. (Doc. 5 at 15–16.) The parties have filed fully briefed cross motions for summary judgment on this issue. (Docs. 9; 12.) The Court held hearing on these motions on October 8, 2021. (Doc. 34.) Such motions are now ripe for ruling and the Court will turn its attention to the issues before it.

**STANDARD**

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party.  *Id.*  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In meeting this burden, conclusory assertions are insufficient, and "non-speculative evidence of specific facts" is required.  *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).  In establishing facts, the parties may rely on evidence in an inadmissible form as long as the evidence could be introduced in an admissible form at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *see also JL Beverage Co. v. Jim Bean Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the

6

underlying evidence could be provided in an admissible form at trial").  Applying these principles, the Court finds that Safeco is entitled to summary judgment.

ANALYSIS

## I.    Montana Law Governs the Policy's Interpretation.

The Court begins with a threshold issue—what law governs the Policy's interpretation.  Because this is a diversity case, the answer to this question depends on application of Montana's choice of law rules.  *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 420 n.16 (9th Cir. 2011).  These rules require the Court to first inquire whether the Policy has a choice-of-law clause.  *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014).  It does not.  (*See generally* Doc. 35-1.)

As such, the Court looks to Montana Code Annotated § 28-3-102, which provides that a "contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  *Davis*, 330 P.3d at 1149.  In other words, when an insurance contract lacks a choice-of-law clause "which state's law governs [its] interpretation . . . depends on its anticipated places of performance, and, if none, the state in which the Policy was made."  *Homesite Ins. Co. of the Midwest v. Frost*, 2020 WL 5369847, *3 (D. Mont. 2022).

Applying this principal, the parties agree Montana law governs the Policy's

7

interpretation.  (Docs. 8 at 6; 10 at 12; 13 at 13; 24 at 13.)  The Court concurs. Because the Policy insures real property located in Montana, it necessarily contemplates that Safeco may have to fulfill its contractual obligations here. *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2004) (holding that an insurance contract's anticipated place of performance includes "the place where an insured is entitled to receive benefits, has incurred accident-related expenses, or is entitled to judgment").  Consequently, the Court will interpret the Policy according to Montana law.

## II.   Coverage A is Inapplicable Because the Outbuilding is Not a Dwelling.

The critical issue before the Court is whether the outbuilding is a dwelling within the meaning of the Policy.  Before addressing the merits of this issue, the Court first enumerates the interpretive principles it is to apply.  First, the Court must consult the text of the Policy, reading it "as a whole, and 'if possible, reconcil[ing] its various parts to give each meaning and effect.'"  *Montana Petroleum Tank Release Compen. Bd. v. Crumleys Inc.*, 174 P.3d 948, 957 (Mont. 2008).  If upon such review, this Court finds the Policy language "clear and explicit," it must enforce it "as written."  *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011).

"If the parties dispute the meaning of a term," however, this Court asks whether it is "ambiguous by viewing the policy from 'the viewpoint of a consumer

with average intelligence not trained in the law or insurance business.'" *Crumleys*, 174 P.3d at 957. A term is ambiguous if it "is reasonably subject to two different interpretations." *Steadele*, 260 P.3d at 149. If the term is "ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail, particularly if an ambiguous provision attempts to exclude the liability of the insurer." *Pablo v. Moore*, 995 P.2d 460, 463 (Mont. 2000). Applying these standards, the Court finds Coverage A cannot be stretched to cover the outbuilding because the outbuilding is not a "dwelling" as that term is used in the Policy.

Recall, Coverage A only extends to "the *dwelling* on the residence premises." (Doc. 35-1 at 18 (emphasis added and internal alterations omitted).) Safeco argues that under a common understanding of the term "dwelling," the outbuilding is not included, and that in any event the state district court's order and Halvorson's compliance notice support this construction of the term and collaterally estop him from arguing otherwise. (Doc. 10 at 14–21.) Halvorson responds that the outbuilding is a dwelling, as that term is used in the Policy, or, at the very least, the term is ambiguous and therefore must be construed in his favor. (Doc. 13 at 14–21.) Upon independent review, the Court finds Safeco's position persuasive.

The Policy does not define "dwelling," but this alone does not render the

9

term ambiguous. *See Infinity Ins. Co. v. Dodson*, 14 P.3d 487, 493 (Mont. 2000) (undefined term in insurance contract not ambiguous). Safeco argues the term "has a clear common meaning as a house or place where someone lives," and accordingly includes only the 3-bedroom house on the Property. (Doc. 10 at 15.) Halvorson, on the other hand, argues the term refers to more than a single structure, and can refer to multiple structures composing a single dwelling such as the 3-bedroom house *and* the outbuilding. (Doc. 13 at 16–17.) The critical focus then is whether, upon reading the Policy as a whole, the term "dwelling" can reasonably be afforded these different interpretations, such that the term is ambiguous.

The Court starts by looking to dictionary definitions because they are helpful in ascertaining whether a term used in an insurance contract is ambiguous. *See Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 866 (Mont. 2013). Webster's defines dwelling as "a residence; abode," with "residence" being defined as "the place where one resides." *Dwelling* and *Residence*, *Webster's New World Compact School and Office Dictionary*, 153, 411 (4th ed. 2002). The Oxford English Dictionary defines dwelling as "[a] place of residence." *Dwelling*, *Oxford English Dictionary*, http://www.oed.com/view/Entry/ 58767 (last visited March 28, 2022). Dictionary.com provides that the term means "a building or place of shelter to live in; place of residence; abode; home."

10

*Dwelling*, *Dictionary.com,* https://www.dictionary.com/browse/dwelling (last visited March 28, 2022).

The Cambridge Dictionary states that a "dwelling" is "a house or place to live in." *Dwelling*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/dwelling (last visited March 28, 2022). The Britannica Dictionary defines "dwelling" as a "place where a person lives." *Dwelling*, *The Britannica Dictionary*, https://www.britannica.com/dictionary/dwelling (last visited March 23, 2022). Black's Law Dictionary defines "dwelling-house," often "shortened to *dwelling*," as "[t]he house or other structure in which one or more people live; a residence or abode." *Dwelling-house*, *Black's Law Dictionary* (11th ed. 2019). This entry further explains that the term "typically includes only the structures connected either directly with the house or by an enclosed passageway." *Id.*

The foregoing definitions establish that the term "dwelling," when afforded meaning from dictionaries alone, can be plausibly read to have a narrower meaning—composed of a singular structure, or a broader meaning—encompassing multiple structures. For example, some dictionary definitions interpret the term "dwelling" to include only a singular structure, such as a house or building, where a person resides or lives. But, on the other hand, some definitions do not limit the term's construction to a singular structure, but rather the more general *place* where someone lives. Looking just to dictionary definitions then, the term dwelling can

11

reasonably be afforded the divergent meanings the parties assign to it.  This lends support for Halvorson's position that the Policy's use of the term dwelling is ambiguous.

But competing dictionary definitions alone do not establish that a term used in an insurance contract is ambiguous.  Instead, ambiguity arises if the Policy, when read in its entirety, reasonably assigns the term two or more different meanings.  *Steadele*, 260 P.3d at 149.  The Court does not find this to be the case here.  If a reasonable consumer were confused about the Policy's use of the term "dwelling," a comparison of Coverage A to Coverage B would resolve any doubt.  Coverage A, in relevant part, covers "the dwelling . . . *including the structures attached to the dwelling other than fences, driveways or walkways*."  (Doc. 35-1 at 18 (emphasis added).)  This language informs the reader that the dwelling constitutes a *single structure* unless that structure and another structure share a specific sort of physical attachment.

Coverage B—labeled "Other Structures"—confirms this understanding, extending coverage to "*other structures . . . separated from the dwelling by clear space.*"  (*Id.* (emphasis added)).  This coverage provision reiterates the dwelling's singular status and teaches that Coverage B extends to those other structures on the insured property that are not the dwelling or attached to the dwelling in a manner that brings them within Coverage A's scope.  Put another way, Coverage B's

12

language confirms that the term "dwelling," as used in the Policy, refers to a singular structure, and, in combination with Coverage A, other structures that may be physically attached to that structure.

The Policy's definition of "residence premises" only serves to solidify this understanding of the term dwelling.  That term is defined as "the one, two, three, or four family *dwelling*, used principally as a private residence" or "*other structures and grounds.*"  (Doc. 35-1 at 42 (emphasis added).)  This language, when read in light of the other Policy provisions outlined above, establishes that the term dwelling refers to the singular structure (and certain attached structures) being utilized as a private residence and separates that term from other structures on the Property, such as a fully detached shed.   Based on this Policy language, the Court finds that the term dwelling is not ambiguous, but instead can only reasonably refer to the principal residential structure on the insured property, along with any other structures that are physically attached to it.

In this case, that would be the three-bedroom house not the outbuilding.  The undisputed facts demonstrate that following Halvorson's compliance with the state district court's order, the three-bedroom house was the only structure on the Property bearing the attributes of a residential structure.  (Doc. 14 at 3–4.)  It is the only structure with a kitchen, bedroom, and bathroom within it.  (Doc. 11-4 at 2.)  Moreover, the dwelling cannot be the outbuilding, because it no longer has any

13

bedrooms or a kitchen, and is not used for core living activities such as cooking or sleeping. (*Id.* at 2 (stating "[b]eds have also been removed from all outbuildings on the property" except for two guest cabins and that the kitchen has been removed from the outbuilding).) In other words, the term dwelling as used in the Policy can only reasonably refer to the Property's three-bedroom house.

To establish ambiguity, Halvorson points to nonbinding cases interpreting what constitutes a dwelling under coverage language mirroring that at issue in this case. The principal focus is on the Idaho Supreme Court's decision in *McFarland v. Liberty Insurance Corporation*, 434 P.3d 215 (Idaho 2019). In *McFarland*, a flooding event caused damage to an insured's "freestanding building which features a bonus room atop a garage." *Id.* at 216. The property also contained a "cabin, containing a kitchen, bathroom, and bedroom" and a "freestanding pump house." *Id.* The homeowner's policy at issue did not define dwelling and used language closely matching the Policy language at issue in this case. *Id.* at 217.

The Idaho Supreme Court began by consulting dictionary definitions, concluding that the term "dwelling" can reasonably refer to either "the more general 'place of residence'" or "the more definite 'house.'" *Id.* at 221–22. This is consistent with the Court's analysis outlined above. But the Idaho Supreme Court disagreed that the remainder of the insurance contract resolved this ambiguity. *Id.* at 222–23. In short, upon examining the policy's language, it concluded that a

14

reasonable consumer could read the term "dwelling" as including two structures, such the cabin and the garage. *Id.* at 222. This Court does not agree the same result is proper in this case.

As stated at length above, the Policy, when read in its entirety, makes clear the "dwelling" is a singular structure, except to the extent there are other structures physically attached to it. Other authority supports this understanding. For example, Safeco points to a section from a treatise interpreting policy language very similar to that at issue here, which provides that the "physical property coverage protected by Coverage A is very limited" and that "detached garages, guest houses, fences and the like are not protected under Coverage A." 5 Joseph D. Jean and Gregory D. Miller, *New Appleman on Insurance Law Library Edition* § 53.02. Such authority is helpful in determining whether a term is ambiguous, *McCartney*, 305 P.3d at 866, and is consistent with the meaning of the term dwelling adopted by the Court above.

Other cases dealing with similar policy language contain language consistent with this understanding. *Horak v. Middlesex Mut. Assur. Co.*, 436 A.2d 783, 783–84 (Conn. 1980) (noting that a "guest house, which contained two bedrooms, a living room, kitchen, bath and attached two-car garage" is "an appurtenant structure as described by the terms of coverage B"); *American Nat. Prop. & Cas. Co. v. Williamson*, 547 F. Supp. 3d 741, 753–54 (D. Ohio 2021) (holding that a

15

homeowner's policy using the undefined term "dwelling" refers to a singular structure because such a construction is "a more natural fit" and consistent with the modern "concept of a 'residence'" that "more naturally brings to mind a single structure, rather than a sprawling estate with several buildings"). At a minimum, there is a split of non-binding authority on this issue, but that alone does not render the term ambiguous. *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 673 (Mont. 2009) (stating that it may nonetheless be relevant "in determining whether ambiguity exists").

As a final matter, the Court shares Safeco's concerns regarding the implications if Halvorson's interpretation of the term dwelling were to prevail. Mainly, that an insured could pull the losses associated with a structure other than the house under the scope of a homeowner's policy's coverage, simply because activities associated with habitation have occurred there. In sum, the Court concludes that, upon reading the Policy as a whole, the outbuilding is not a dwelling. The Court need not go any further. Based on the foregoing, the Court elects not to reach the issue of whether Halvorson is collaterally estopped from claiming the outbuilding is a dwelling under the Policy or whether, assuming it is a dwelling, it was being used principally as a private residence. Summary judgment will be granted in favor of Safeco.

Accordingly, IT IS ORDERED that, for the reasons stated herein, Safeco's

summary judgment motion (Doc. 9) is GRANTED and Halvorson's summary judgment (Doc. 12) is DENIED.

IT IS FURTHER ORDERED that the Court DECLARES the Policy's Coverage A does not apply to the loss of the outbuilding, because it is not a "dwelling" within the meaning of the Policy.

IT IS FURTHER ORDERED that the trial setting and all associated deadlines are VACATED, and any other pending motions are DENIED as moot.

The Clerk of Court is directed to enter judgment in Safeco's favor by separate document and close the case file.

Dated this 28th day of March, 2022.

Dana L. Christensen, District Judge
United States District Court